118 P.3d 678

STATE of Hawai'i, Plaintiff–Appellee,

v.

Maximo SERRAON, Defendant–Appellant;

State of Hawai'i, Plaintiff,

v.

Maximo Serraon, Defendant.

Nos. 26408, 26409.

Intermediate Court of Appeals of Hawai'i.

July 19, 2005.

William A. Harrison, Honolulu, (Harrison & Matsuoka), on the briefs, for defendant-appellant.

Mark Yuen, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., LIM and NAKAMURA, JJ.

Opinion of the Court by LIM, J.

Maximo Gregory Serraon (Defendant) brings this consolidated appeal (Nos. 26408 & 26409) of the January 27, 2004 judgments [1] in Cr. Nos. 02–1–2634 and 03–1–0454, which arose out of a consolidated jury trial and convicted him of assault in the third degree and terroristic threatening in the second degree, respectively. Defendant argues that prosecution of the two charges was precluded by his prior no contest plea to a harassment charge "arising from the same episode." Hawaii Revised Statutes (HRS) § 701–109(2) (1993). We disagree, and affirm.

## I. Background.

On December 4, 2002, a complaint was filed in Cr. No. 02–1–2634 charging Defendant with assault in the third degree, and alleging that on June 13, 2002, he caused bodily injury to Phil Owen (Owen). On February 28, 2003, a complaint was filed in Cr. No. 03–1–0454 charging Defendant with terroristic threatening in the second degree, and alleging that on May 30, 2002, he threatened to cause bodily injury to Owen.

Also on February 28, 2003, a complaint was filed in Cr. No. 03–1–0454 charging Defendant with harassment, and alleging that on January 26, 2002, he insulted, taunted or challenged Owen in a manner likely to provoke an immediate violent response or cause Owen to reasonably believe that Defendant intended to cause bodily injury to him.

1. The Honorable Steven S. Alm presided.

On April 30, 2003, a stipulation and order was filed consolidating Cr. Nos. 02–1–2634 and 03–1–0454 for trial. On August 19, 2003, Defendant moved in Cr. Nos. 02–1–2634 and 03–1–0454 to dismiss the respective complaints on double jeopardy grounds, because Cr. No. 03–1–0454 had been remanded to the District Court of the First Circuit and Defendant had there, on August 14, 2003, pled no contest to the harassment charge.

Attached to Defendant's motion were two typewritten statements Owen made to the police. The first, signed by Owen on October 25, 2002 at 12:00 noon, stated in relevant, verbatim part:

> January 26, 2002, 12:00 noon
>
> Chun's Reef parking lot, North Shore, Hawaii Max Serraon violently threaten to shove the fins of his surfboard up my fucking ass the next time he see's me taking off on a wave.
>
> . . . .
>
> June 13, 2002, 6:00 p.m.
>
> Public's Surf Break, Waikiki, Hawaii
>
> Max Serraon Paddled inside of me while I was trying to catch a wave. He got off his surfboard and lifted the tail out of the water exposing the fins aiming them at me. This happened three times attempting to spear me as I tried to catch each wave.
>
> . . . .

The second, signed by Owen on October 25, 2002 at 1:00 p.m., stated in relevant, verbatim part:

> May 30, 2002, 5:30 p.m.
>
> Chun's Reef Surf Break, North Shore, Hawaii
>
> Max Serraon paddled up to me while I was waiting for a wave. He started threatening me saying I am ugly, a fucking queer and I like being fucked up the ass. He said this repeatedly and violently each time. Then he started to punch the water saying that was my face. Then he proceeded to punch his fist into his other hand screaming violently at me saying he is going to pound my face into tomatoe soup!
>
> . . . .
>
> June 13, 2002, 6:00 p.m.
>
> Public's Surf Break, Waikiki, Hawaii

> Max Serraon paddled up to me saying he can bench press 300 lbs. and can break my neck. He also said he really wants to punch he fucking face in. . . . Later he threaten's me, he wants to go to the beach and punch my fucking face in. Then he tells me I better watch my back because one day he will catch me in the parking lot.
>
> . . . .
>
> As each incident occured Max Serraon provoked and escalated each threat to a higher level. I feared for my life because he was in a violent rage. Also this person is 200 lbs. with a muscluar build. Since he was so persistence in his threats I seriously believed his threats were real. If I saw Max G. Serraon again I will recognized him and I want to prosecute him for these actions.

In a memorandum in support of his motion to dismiss, Defendant cited HRS §§ 701–111(1)(b), –109(2) and –109(3) (1993):

> **§ 701–111 When prosecution is barred by former prosecution for a different offense.** Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:
>
> (1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3) and the subsequent prosecution is for:
>
> . . . .
>
> (b) Any offense for which the defendant should have been tried on the first prosecution under section 701–109 unless the court ordered a separate trial of the offense[.]
>
> **§ 701–109 Method of prosecution when conduct establishes an element of more than one offense.** . . . .
>
> (2) Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of

the first trial and are within the jurisdiction of a single court.

(3) When a defendant is charged with two or more offenses based on the same conduct or arising from the same episode, the court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

Thereupon, Defendant argued:

The assault and terroristic threatening charges for which Max Serraon was arrested were clearly known to the Prosecuting Attorney prior to his entry of plea in the harassment matter adjudicated in the Wahiawa District Court. In fact it was the State that sought to separate the charges and remand the harassment charge to the District Court.

Defendant submits that the State through the Prosecuting Attorney was fully apprised of the facts and circumstances surrounding the assault, harassment and threatening charges prior to the entry of plea in the harassment case on August 14, 2003, thus was required to prosecute all charges which arose out of the same facts and circumstances of the complaint alleged in this matter together in one proceeding and not subject Defendant to the uncertainty of multiple trials with reference to the charges herein.

After a hearing held on September 22, 2003, the circuit court filed its September 26, 2003 order denying Defendant's motion to dismiss the complaints in Cr. Nos. 02–1–2634 and 03–1–0454, finding that:

1. The harassment, terroristic threatening and assault third charges occurred on separate days and are based upon separate incidences;

2. The harassment, terroristic threatening, and assault third charges are not the same or included offenses;

3. The facts and circumstances that provide the grounds for the harassment, terroristic threatening and assault third charges, are not based upon the same conduct or arise from the same episode.

4. The terroristic threatening and assault third charges can be prosecuted without reference to the harassment charge.

The consolidated jury trial commenced on November 12, 2003. Owen first testified about a January 20, 2002 incident which formed a backdrop for the three subsequent spats that spawned the charges against Defendant. Owen and Defendant had been surfing buddies, surfing the North Shore together frequently and dining together occasionally, *apr'es*-surf. Owen and Defendant were surfing big Laniakea late that afternoon and had been in the water most of the day, when a set wave loomed. As Owen took off on the wave, Defendant paddled up the wave face in front of Owen in a futile attempt to avoid being caught inside the break and severely pummeled. That was, according to Owen, a clear violation of surfing right-of-way. Owen immediately realized that a collision was imminent. To avoid running Defendant over, Owen jumped off his surfboard and he, too, suffered the consequences.

When the two surfaced, they found that Owen's surfboard leash had held, but Defendant's had not. According to Owen, Defendant was panicking because he was exhausted from surfing all day and his surfboard has been washed into the beach some three hundred yards away. Owen allowed Defendant to rest on his surfboard for awhile, then requisitioned the board of another surfer in lieu and surfed in to retrieve Defendant's board. Once Defendant got his board back, he was able to paddle in on his own.

Owen went to check on Defendant in the beach parking lot. Defendant said he was fine and offered to buy Owen dinner. They dined that night in Wahiawa, at "So Lin" [sic; presumably, "Seoul Inn"]. They did not talk about the incident, just about "surfing and other things." According to Owen, they parted that night still friends. Nevertheless, Owen thought that Defendant's breach of surfing etiquette had endangered them both.

Owen then testified about the May 30, 2002 incident that gave rise to the threatening charge. At about 5:30 p.m., Owen paddled out at Chun's Reef, another North Shore surf spot. As Owen was waiting for a wave,

Defendant paddled by and fixed him with an intense stare of hatred—the "stink eye," in common parlance. Then Defendant started swearing at Owen, yelling, "You're a fucking fag. You're a fucking queer. You like being fucked up the ass." (Internal quotation marks omitted.) Defendant started hitting the water with his fist, screaming, "I'm gonna punch your fucking face in. . . . I'm gonna turn your face into tomato soup." (Internal quotation marks omitted.) Owen was bemused, because he did not know why Defendant was doing that to him. He feared for his life because Defendant is bigger than him and seemed ready to attack. At that point, some other surfers intervened and Owen was able to paddle away. Owen later heard from others why Defendant was furious with him.[2]

Owen also recounted the June 13, 2002 incident that led to the assault charge. He paddled out at Public's, a Waikiki surf spot, at about 6:00 p.m. He stationed himself outside of the pack of surfers in hopes of catching the bigger waves. Defendant paddled over and again fixed Owen with the "stink eye." Defendant flexed a biceps and told Owen—"real, real subtly" but "like he meant it"—that "I can bench 300 pounds and I can break your fucking neck." (Internal quotation marks omitted.) Owen remembered that Defendant offered to "punch my fucking face in." Owen told Defendant to "leave me alone and grow up." Then, Owen paddled away from Defendant.

Defendant followed, however, and threw an elbow into Owen's back, like "he was trying to break one of my ribs." Owen paddled away again, but Defendant pursued and threw another elbow into Owen's back. Both times, Owen felt pain. Owen paddled into the pack in hopes that the crowd would inhibit further attacks. It did not. Defendant paddled at Owen and tried to run him over with his surfboard. Owen dodged, but Defendant did it again and this time lunged

on top of Owen and wrapped an arm around his neck, which hurt. Defendant was "trying to break my neck under water." Owen was taking in water, so he pried Defendant's arm off and surfaced. There, Defendant proposed to "take it to the beach[,]" saying, "I want to punch your face in." Then, "he said, you know, you better watch your back. I'm gonna catch you one day in the parking lot."

Owen paddled towards the beach, hoping to catch a wave in and away from Defendant. But Defendant could paddle faster on his longer surfboard and got inside of him, and as Owen was paddling for a wave, Defendant turned his board over and thrust the skegs at him. Owen felt that Defendant was "trying to spear me." Finally, Owen was able to escape and paddle in to shore, where he called the police and hand-wrote a statement.

The next day, Owen woke up with a pain in the neck. It was a deep pain accompanied by stiffness. Owen's right arm and hand also hurt—"shooting pains going down my arm and my hand." Owen saw the doctor that day and was subsequently treated with various modalities. Still, the pain lasted for about five months.

The jury found Defendant guilty of assault in the third degree in 02–1–2634 and terroristic threatening in the second degree in Cr. No. 03–1–0454.

## II. Discussion.

Defendant raises a single point of error on appeal: "Whether the court erred when it interpreted the relevant provisions of Hawaii Revised Statutes § 701–109(2) and § 701–111(1)(b) as prohibiting the court from granting Defendant's pretrial motion to dismiss." Opening Brief at 8. We decide the circuit court did not.

The three charges against Defendant, based upon incidents occurring on different dates and at different places under distinct

---

2. Under cross-examination, Phil Owen (Owen) denied that he had been going around after the January 20, 2002 Laniakea incident saying that Maximo Serraon (Defendant) almost caused him to drown that day. Owen acknowledged telling people that there was an accident in the surf and that he had saved Defendant's life. Owen denied telling anyone that Defendant was "crazy" or a

"kook." Likewise, Owen maintained that Defendant never approached him and demanded to know why he was telling Defendant's friends that he was a "kook." Owen clarified that, immediately after the May 30, 2002 Chun's Reef incident, he did tell one of the eyewitnesses that Defendant was a "kook."

circumstances, were patently not "based on the same conduct or arising from the same episode[.]" HRS § 701–109(2). In other words,

> "the alleged conduct was [not] so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." [*State v. ]Carroll*, 63 Haw. 345,] 351, 627 P.2d [776,] 780 [ (1981) ]. We conclude[ ] that the offenses were so separate in time and place and so distinct in circumstances that § 701–109(2) did not bar prosecution for the [assault and threatening charges.]

*State v. Servantes*, 72 Haw. 35, 38–39, 804 P.2d 1347, 1349 (1991).

Defendant here makes essentially the same arguments he made below in urging the circuit court to grant his motion to dismiss. Those arguments are unavailing. The possibility that all three offenses were actuated by the Laniakea incident and its aftermath cannot be the sole driver of the inquiry here, no matter how relevant and strategically important the mention of motive might be in a trial of the case:

> Thus, we can infer from the commentary to Model Penal Code § 1.07(2) [Proposed Official Draft, 1962] that the Legislature, in formulating HRS § 701–109(2), did not intend a determination of a single criminal "episode" to be based solely upon a defendant's singular criminal objective or common purpose or plan.

*Carroll*, 63 Haw. at 350–51, 627 P.2d at 780. Likewise, the allegation that the January 26, 2002 incident underlying the harassment charge was the first overt manifestation of Defendant's anger at Owen is not dispositive:

> Although we reject the State's interpretation of "episode," we acknowledge that evidence of one crime is admissible in the trial of another crime if it tends to prove motive, intent, common scheme or plan, or design involving the commission of two or more crimes so related that proof of one tends to prove the other. *Drew v. United States*, 331 F.2d 85, 90 (D.C.Cir.1964). However, mere allegations of a defendant's subjective intent are insufficient to require joinder of offenses that are otherwise unrelated.

*Id.* at 351, 627 P.2d at 780. And the happenstance that all three offenses were the subject of a single police report and a single temporary restraining order has little resonance in this HRS § 701–109(2) analysis.

### III. Conclusion.

Accordingly, the January 27, 2004 judgments in Cr. Nos. 02–1–2634 and 03–1–0454 are affirmed.